IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ARTHUR CARSON, #517349 | § | |
| VS. | § | CIVIL ACTION NO. 6:06cv559 |
| DIANNE JOHNSON, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Arthur Carson, an inmate confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred for findings of fact, conclusions of law and recommendations for the disposition of the case.

Plaintiff's Allegations

The present lawsuit was filed on December 22, 2006. The Plaintiff alleged that the health care providers at the Michael Unit and the University of Texas Medical Branch in Galveston ("UTMB"), along with prison officials, have engaged in an elaborate scheme of retaliation in response to a 1991 settlement agreement in *Carson v. Estelle*, Civil Action No. TY-79-356-CA. As such, they have purportedly refused to treat a carcinogenic infection that will not heal under his eye or refer him to a dermatologist or conduct a biopsy. The Defendants have further refused to provide him with anything for his back pain, headaches and dizziness. They have made him susceptible to liver damage/failure or death by failing to treat his Hepatitis C.

The Plaintiff further alleged that prison officials have twice violated the compromise settlement by returning him to the Michael Unit. It is noted that his motion to hold the Defendants in contempt in Civil Action No. TY-79-356-CA was denied. He argued that he has been subjected to gross medical indifference. He stated that he has a bulging back disc, hearing impairment, HCV hypertension and that these conditions have degenerated with age. Nonetheless, his previous medical and housing restrictions were purportedly arbitrarily removed by a physicians assistant. His bottom bunk restriction was removed. When he refused to climb up to a top bunk, he received a disciplinary case. He alleged that UTMB has permitted physicians assistants to "run amok."

The Plaintiff complained that P. A. Virginia Buchanan conducted an unnecessary medical examination on November 7, 2006, after he had just had his annual physical on July 5, 2006. She told him that his liver enzyme level was at a critical level at 74, although she refused to provide Milk Thistle supplements to prevent liver damage. She also refused to treat him for headaches or dizziness. He complained that she added an additional hypertension drug, Hydrochlorothiazide 25 mg., also known as a "water pill." She refused to provide information regarding the "Drug Dangers and Side effects, or its simultaneous toxic Cocktail on [his] liver with [his] other medications, i.e., Diltiazem, 480 mg.; Enalpil, 20 mg.; Aspirin, 325." He complained that she will not refer him to an expert, which is causing progressive deterioration, Cirrhosis and liver disease. He likewise complained about the lack of a referral to a neurologist and gastroenterologist. He also complained about State Classification Director Larry LeFlore's failure to stop his return to the Michael Unit.

<u>Abuse of Court</u>

The Plaintiff is well known for abuse of court. The Prisoner Litigation Index lists 32 lawsuits filed by him. The history of his abuse of court, monetary sanctions imposed against him, and his

accumulation of at least "three strikes" was fully discussed in *Carson v. Johnson*, 112 F.3d 818 (5th Cir. 1997). Pursuant to 28 U.S.C. § 1915(g), the Fifth Circuit thus held that he may not proceed *in forma pauperis* in any lawsuit which does not involve imminent danger of serious physical injury. *Id.* at 823.

In the present case, the Court reviewed the factual allegations and concluded that the facts needed to be developed in order to determine whether the Plaintiff was under imminent danger of serious physical injury at the time he filed the lawsuit. Furthermore, the Court concluded that an additional effort was needed to develop the facts regarding whether his claims have potential merit. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986). Consequently, the Court considered the screening options approved by the Fifth Circuit in *Parker v. Carpenter*, 978 F.2d 190, 191-92 n.2 (5th Cir. 1992). The Court concluded that the most feasible course of action was to require prison officials to provide the Court with materials pertinent to a just and fair adjudication of the matters herein presented. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (cited with approval in *Cay and Parker*); *Norton v. Dimazana*, 122 F.3d 286 (5th Cir. 1997). The prison system was thus ordered to file a *Martinez* Report.

## *Martinez* Report

The Office of the Texas Attorney General filed the requisite *Martinez* Report (hereinafter "Report") on April 2, 2007. The Report is massive. The documents attached to the Report included affidavits from the Defendants, medical records, grievance records, health summary classifications, sick call requests, and letters from investigators for the Patient Liaison Program.

The first area that was discussed concerned the Plaintiff's complaints about P. A. Buchanan's alleged failure to provide medical care for his back problems. In her affidavit, Buchanan noted that

he never complained to her about back problems and thus she has not dealt with such problems. The medical records reveal that the Plaintiff submitted a complaint about not having a low bunk restriction and that he was seen by P. A. Diane Johnson on May 1, 2006. She noted that he did not meet the criteria for a low bunk restriction. P. A. Buchanan noted that the Plaintiff had an annual physical examination on July 5, 2006. He was evaluated for his subjective complaints of back pain and bulging disc during the exam. As a result of the exam, his medical restrictions included a low bunk, no lifting over 25 pounds, no bending at the waist and no squatting. The restrictions were ordered based on the Plaintiff's subjective complaints of back pain. It is noted that the restriction was added on June 15, 2006. The summary of the *Martinez* Report notes that the Plaintiff's current HSM-18 has a low bunk restriction and that a disciplinary case that resulted from failure to sleep in a top bunk was overturned as a mistake due to the restriction.

The *Martinez* Report next discussed the chronic skin lesion below the Plaintiff's right eye. The Plaintiff was examined on November 13, 2006. The initial diagnosis by Dr. Thompson was "a chronic skin pigmentation probably from chemical irritation." The Plaintiff was seen again on December 26 and 29, 2006. Dr. Monte Smith ordered a biopsy, which revealed subacute dermatitis, which is not an infection nor cancerous. On January 22, 2007, he was prescribed Betamethasone cream and Plendil and Diprosone cream.

P. A. Buchanan noted in her affidavit that the Plaintiff was evaluated by a physician for a chronic skin lesion below his right eye on December 29, 2006. A skin shave biopsy was performed. As noted in the summary, the biopsy revealed subacute dermatitis, which is not an infection nor cancerous, which was treated with prescribed medication.

4

The *Martinez* Report next discussed hepatitis, hypertension, headaches and dizziness. In response to the Plaintiff's complaint that he had not been treated for hepatitis, the records reveal he has been routinely seen in a Chronic Clinic, including the dates of March 28, 2006; April 3, 2006; July 5, 2006 and November 11, 2006. All of these dates were before the lawsuit was filed. The records also reveal that he was treated many times for dizziness, hypertension and headaches. P.A. Buchanan stated in her affidavit that new studies were scheduled for April, 2007, to determine if he is a candidate for treatment for Hepatitis C.

The Court's independent review of the medical records confirm the summary. P. A. Maria Berger performed a physical examination on July 5, 2006. She noted the Plaintiff's complaint that his hearing had decreased over the years. The Plaintiff complained about frontal headaches, thus his prescription for Enalapril was switched to Propranolol. She noted a chronic bulging disc in his spine and tinea pedis. She noted his history of Hepatitis C and hypertension. She issued instructions to have a follow-up in one month regarding the headaches. She ordered various lab tests. Hytone 1% cream and Inderal 20 mg. tabs were prescribed. She made no changes to his medical restrictions. The lab tests revealed that his Glycosylated Hemoglobin was 6.1, while normal was listed as 4.0 to 6.0. His ALT liver enzyme test was 74, which was above the normal range of 9 to 51.

Two days later, on July 7, 2006, the Plaintiff received a pre-segregation health evaluation at the Coffield Unit. The following medications were noted: Ascriptin 325 mg., Dilacor XR 240 mg., Hytone 1% cream and Vasotec 20 mg. It was noted that he had been assigned to chronic care for Hepatitis C and hypertension. Hearing loss and low back pain were also noted.

With respect to the lesion under the Plaintiff's right eye, the medical records reveal that Dr. Thompson examined the Plaintiff on November 13, 2006. The Plaintiff complained about a

persistent rash on his face for six months with no known cause. Dr. Thompson described the area as darkened red skin below the right eye with no known irritant, but he noted that the Plaintiff did work with chemicals at the time of the rash. He noted no itching and no thickening. His assessment was chronic skin pigmentation, probably from chemical irritation. He prescribed diprosone cream. The Plaintiff submitted a new sick call request on December 25, 2006, noting that the lesion was still there. An appointment was made to see a doctor. The Plaintiff was examined by Dr. Monte Smith on December 29, 2006. Dr. Smith observed a hyperpigmented scaly skin lesion. He observed that the rim of the Plaintiff's glasses rubbed against the skin lesion. He ordered a biopsy. The results of the biopsy, dated January 4, 2007, had a clinical diagnosis of lichen simplex chronicus - subacute dermatitis. Dr. Thompson prescribed betamethasone. P. A. Buchanan noted the Plaintiff's sick call request about the problem again on February 13, 2007, and betamethasone was prescribed. On March 1, 2007, the Plaintiff submitted a new sick call request noting that the betamethasone had not cleared up the problem. Another sick call request was submitted on March 13, 2007, and he was told to see the nurse at sick call.

The medical records are replete with entries concerning the Plaintiff's hypertension and Hepatitis C. He has routinely been prescribed medication for hypertension. The doctors concluded from the examinations for Hepatitis C that his condition had not deteriorated to a point where treatment was needed. It is again noted that P. A. Buchanan specified that he was being evaluated again this month. On July 5, 2006, P. A. Berger noted after her examination that the Plaintiff's hypertension was well controlled at that time and his hepatitis was asymptomatic. On January 22, 2007, Dr. Thompson described the Plaintiff's hypertension as uncontrolled, and he prescribed medication for it. With respect to the liver enzyme test result of 74, a nurse noted on October 11,

6

2006, that it was only a little high. The medical records are also replete with entries where medication was provided for headaches.

The medical records includes a number of Health Summaries for Classification, also referred to as HSM-18s. The earliest HSM-18 provided was dated March 20, 2006. There were no restrictions for housing or work. On May 24, 2006, in response to a Step 2 grievance, Warden Pratt noted that medical personnel reiterated that he did not meet the criteria for a low bunk assignment. The next HSM-18 was dated July 10, 2006. Once again, there were no restrictions. The next HSM-18 was dated July 13, 2006. A lower bunk restriction was added for housing. For purposes of work, the following restrictions were added: no lifting over 25 pounds, no squatting and no exposure to loud noises. The restrictions noted not to assign him to medical. P. A. Buchanan prepared the next HSM-18 on November 6, 2006. The bunk assignment was lifted. The work assignments were kept in place. Dr. Thompson prepared another HSM-18 on November 13, 2006. For work purposes, he added two new restrictions: no bending at the waist and no climbing. He made no changes to the housing restrictions. On December 5, 2006, Dr. Thompson filled out another HSM-18. He made one change, which once again added the lower bunk restriction. No other HSM-18s were included in the record. It is noted that the lower bunk restriction was in place when the Plaintiff filed the lawsuit on December 22, 2006. It is also noted that the Plaintiff's job assignment at the time he filed the lawsuit was a field medical squad.

Grievance Number 2007055089, which was filed on December 1, 2006, complained about deletion of the low bunk assignment and disciplinary cases for failing to obey orders concerning the bunk assignment. In response, Warden Pratt noted that there was an error, the disciplinary case was overturned and his low bunk assignment was acknowledged.

7

Grievance number 2007050761 concerned a need for a biopsy of the Plaintiff's skin under his eye and treatment for hypertension and Hepatitis C. On January 2, 2007, Warden Pratt noted that the health care providers know that he has hypertension and Hepatitis C and medications have been prescribed. He did not mention the request for a biopsy nor the HSM-18 problem.

Finally, Larry LeFlore's affidavit discussed the transfer to the Michael Unit. This issue was dealt with in TY-79-356-CA. The Plaintiff was sent to a unit in East Texas to be closer to his mother. When he submitted a request to change his faith in the records from Muslim to Native American, he was transferred to the only unit in East Texas that has Native American Services, which is the Michael Unit. His transfer had nothing to do with the agreement in the previous case. The Court further notes that the agreement in 1991 said the Plaintiff would be transferred to another unit and he was transferred. It did not prohibit officials from transferring him to the Michael Unit at some point in time in the future.

<u>Discussion and Analysis</u>

The immediate issue before the Court concerns whether the Plaintiff was under imminent danger of serious physical injury at the time he filed the lawsuit. The records reveal that the Plaintiff's low back problems were recognized at that time and that the problems with a low bunk assignment had been resolved. The skin lesion was under review at the time the lawsuit was filed, and it proved to be nothing more than lichen simplex chronicus - subacute dermatitis, a stubborn skin condition, which is not an infection nor cancerous. Undoubtedly it is annoying, but it did not constitute an imminent danger of serious physical injury. The Plaintiff also has asymptomatic hepatitis that has been routinely evaluated and has not developed to the point where treatment is needed. His ALT levels were just a little high. He has also been routinely treated for hypertension

8

and headaches. The medical records reveal that the medical professionals are treating the Plaintiff for a number of medical conditions, but there is nothing supporting an inference that he faced an imminent danger of serious physical injury at the time he filed the lawsuit. The lawsuit should accordingly be dismissed pursuant to 28 U.S.C. § 1915(g).

The Court would add that even if the case were not dismissed pursuant to § 1915(g), it would have to be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and as frivolous. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994). The massive medical records reveal that medical personnel have been responsive to the Plaintiff's medical needs. They have not been deliberately indifferent.

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

9

disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). There may have been some mistakes over the low bunk assignment and the dermatological problem below the Plaintiff's right eye may still be troublesome, but no one has shown deliberate indifference.

The Plaintiff also characterized the response to his medical problems as retaliation. To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). In the present case, the Plaintiff has not shown that anyone acted with a retaliatory intent. He provided nothing more than a conclusory allegation of retaliation.

As a final matter, as in *Carson v. Johnson*, the Plaintiff should not be permitted to proceed *in forma pauperis* and he should be permitted to proceed with the lawsuit only if he pays the full filing fee within thirty days from the issuance of the Order of Dismissal. 112 F.3d at 823. In the

event that the full filing fee is paid, then the lawsuit should still be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for reasons previously explained.

## Recommendation

It is recommended that the complaint be dismissed with prejudice for purposes of *in forma pauperis* proceedings pursuant to 28 U.S.C. § 1915(g). The Plaintiff's *in forma pauperis* status should be withdrawn.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 20th day of April, 2007.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE